UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| GEM MECHANICAL SERVICES, INC.,<br>Plaintiff,<br><br>v.<br><br>DV II, LLC, CLEVELAND<br>CONSTRUCTION, INC., WAL-MART<br>STORES EAST, LP, and FEDERAL<br>INSURANCE COMPANY,<br>Defendants. | C.A. No. 12-93-M |

## **MEMORANDUM AND ORDER**

Before the Court is Defendants' Motion to Compel Arbitration and Stay Proceedings. (ECF No. 17.)  Plaintiff Gem Mechanical Services, Inc. (GEM) filed a five count complaint in Rhode Island Superior Court against four defendants in connection with a construction project in North Smithfield, Rhode Island.  (ECF No. 1-1.)  DV II, LLC, one of the four defendants, was dismissed by a Rhode Island Superior Court Order.  (ECF No. 1-2.)  The remaining three defendants — Cleveland Construction, Inc. (CCI), Wal-Mart Stores East, LP (Wal-Mart), and Federal Insurance Company (Federal) (collectively, Defendants) — removed the matter to this Court.  (ECF No. 1.)  All parties agreed to dismiss Count I.  (ECF No. 2.)  Then Defendants moved to dismiss, or in the alternative, to transfer venue to the United States District Court for the Northern District of Ohio.  (ECF No. 5.)  The Court denied that motion.[1]  (ECF No. 14.) Defendants now move to stay these proceedings and compel GEM to arbitrate its claims against CCI in Lake County, Ohio.  (ECF No. 17.)  For the reasons explained below, Defendants' Motion to Compel Arbitration and Stay Proceedings is GRANTED.

---

[1]  The Court found there that R.I. Gen. Laws § 6-34.1-1 (1956) voids forum selection clauses for litigation in construction contracts.

## I.   FACTS

CCI, a general contractor, was hired to construct a Wal-Mart Supercenter in North Smithfield, Rhode Island. (ECF No. 17-1 at 1.) CCI then hired subcontractor GEM to perform mechanical, plumbing, and other work as set forth in a written Subcontract Agreement (the Agreement). *Id.* at 2. The Agreement was entered into on December 22, 2010, signed by CCI and GEM, and provided that CCI would pay GEM $477,700.00. *Id.* at 22. GEM alleges that it performed additional work valued at $146,625.01, bringing the total amount CCI owed GEM to $624,325.01. (ECF No. 1-1 at 3-4.) GEM claims CCI has paid it only $503,911.54, leaving GEM still due and owed $120,413.47 plus interest and costs. *Id.* at 4. This amount remains unpaid and is the subject of the current dispute.

## II.   ANALYSIS

Article 30.3 of the Agreement contains an arbitration clause providing that "[a]ny controversy or claim of CCI against [GEM] or [GEM] against CCI shall, *at the option of CCI*, be resolved by arbitration . . . held in Lake County, Ohio." (ECF No. 17-1 at 14 (emphasis added).) Prior to filing the motion to compel arbitration, CCI invoked this clause in a letter demanding that GEM arbitrate its instant claims with CCI in Lake County, Ohio. (ECF No. 17-2.) GEM refused to arbitrate. (ECF No. 17-3.) Defendants moved the Court for an order compelling GEM to arbitrate its dispute with CCI in Lake County, Ohio as well as an order staying GEM's claims against Wal-Mart and Federal during the pendency of that arbitration because those claims arise out of the same set of facts and circumstances as GEM's claims against CCI. (ECF No. 17 at 1.) GEM counters that the arbitration clause is invalid and unenforceable and that its claims against Federal and Wal-Mart should proceed. (ECF No. 18 at 8, 11.) Alternatively, if arbitration is ordered, GEM contends it should take place in Rhode Island. *Id.* at 11-12.

2

### A.    Arbitration

Defendants seek to enforce the Agreement's arbitration clause and contend that the Federal Arbitration Act, 9 U.S.C. § 2 (the FAA), preempts Rhode Island General Laws § 6-34.1-1, a statute making void contract clauses requiring "arbitration in another state." (ECF No. 17 at 4-5.) Therefore, according to Defendants, the Court should enforce the Agreement's arbitration clause and, pursuant to § 4 of the FAA, order GEM to arbitrate its claims against CCI in Lake County, Ohio. *Id.* at 7. GEM counters that the arbitration clause is unenforceable under general contract principles because it is unilateral and ambiguous. (ECF No. 18 at 3, 6-10.) According to GEM, the Court should strike the arbitration clause from the Agreement. *Id.* at 6.

The Court does not read § 6-34.1-1 to raise a preemption conflict on the issue of whether the parties must arbitrate. As the statute's name *"Law applicable* to construction contracts" indicates, the statute does not address the question of whether an arbitration clause itself is enforceable. (Emphasis added.) Instead, § 6-34.1-1 only pertains to the location and applicable law of the arbitration. The statute makes voidable "a provision that makes the contract or any conflict arising under it subject to . . . arbitration in another state." R.I. Gen. Laws § 6-34.1-1(a) (1956). Therefore, § 6-34.1-1 has no impact on the decision of whether the parties must arbitrate. The FAA and the language of the Agreement govern the validity and enforceability of the provision

Because the FAA makes arbitration agreements valid and enforceable, "save upon grounds as exist at law or in equity for the revocation of any contract," Article 30.3 of the agreement shall be enforced unless there are any general contract principles demanding otherwise. *See* 9 U.S.C. § 2. GEM contends the arbitration clause is invalid first as a unilateral and illusory promise, and second as ambiguous. (ECF No. 18 at 3.)

3

Both of GEM's arguments claiming the agreement is an improper unilateral contract and that it is ambiguous lack merit. GEM presents no proper authority for its proposition that Article 30.3 is void under Rhode Island law because it is unilateral. The cases referenced by GEM in support of this proposition are unrelated to the present issue and do not hold that agreements such as the one between GEM and CCI are contrary to Rhode Island law. Furthermore, the cases GEM cites in support of its argument that the clause is illusory are not on point. For example, the holding in *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012) was focused more on invalidating agreements as illusory if they allow for one party to "avoid its obligation to arbitrate by *amending* the provision or *terminating it altogether*." (Emphasis added.) CCI did not, by the terms of Article 30.3, reserve the power to amend or terminate the arbitration clause, but rather only reserved the option of whether to arbitrate. (ECF No. 17 at 4.)

GEM's argument that the clause is ambiguous when read in the context of the entire Agreement is similarly unpersuasive. As Defendants correctly point out, "there are no conflicts between Article 30.2, 30.3, and 30.6." (ECF No. 19 at 3.) The Court agrees that Article 30.3 is clear on its face and that nothing in any of the other provisions cited by GEM confuse or undermine CCI's power to opt for arbitration set forth in Article 30.3. The Court finds that the Agreement's arbitration clause is not ambiguous.

In light of the above findings, the Court is left to decide whether the arbitration should take place in Ohio, as stated in the Agreement, or in Rhode Island, as advocated by GEM. The Court must now address whether the FAA preempts § 6-34.1-1 on the issue of arbitration venue. The First Circuit has instructed that "[a]ny analysis of a party's challenge to the enforcement of an arbitration agreement must begin by recognizing the FAA's strong policy in favor of rigorously enforcing arbitration agreements." *KKW Enters., Inc. v. Gloria Jean's Gourmet*

4

*Coffees Franchising Corp.*, 184 F.3d 42, 49 (1st Cir. 1999). In *KKW*, the First Circuit held that the FAA preempted the section of the Rhode Island Franchise Investment Act (the Franchise Act) prohibiting provisions in franchise agreements designating arbitration venues outside of Rhode Island.[2] *Id.* at 50-51. The First Circuit found this prohibition "an obstacle to the achievement of the full purposes and ends which Congress set out to accomplish in enacting the FAA" and that "[a]ny state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *KKW*, 184 F.3d at 49-50.

Once satisfied that the arbitration agreement is valid, § 4 of the FAA instructs courts to "[direct] the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The First Circuit has explained that the "venue" where "arbitration is to take place is a 'term' of the parties' arbitration agreement[]." *KKW*, 184 F.3d at 50. The Court is satisfied that the arbitration agreement between GEM and CCI is valid, and so, because § 4 of the FAA requires arbitration to take place as stated in the Agreement, in this case Ohio, and § 6-34.1-1 would allow GEM to void those terms and choose to arbitrate in Rhode Island, the Court finds that § 6-34.1-1 interferes with and is contrary to § 4 of the FAA as it relates to where the parties are required to arbitrate their dispute. Therefore, as per the terms of the Agreement, arbitration will take place in Lake County, Ohio.

**B.    Stay**

Defendants seek a stay of GEM's proceedings against Federal and Wal-Mart during the pendency of the GEM-CCI arbitration because GEM's claims against Federal and Wal-Mart "are wholly dependent upon [GEM's] claims against Cleveland." (ECF No. 17 at 6.) GEM argues

---

[2] Other courts dealing with similar state statutes have found them preempted by the FAA. *See, e.g., OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 447-48 (5th Cir. 2001); *Bradley v. Harris Research, Inc.*, 275 F.3d 884, 888-90 (9th Cir. 2001).

that because neither Federal nor Wal-Mart can invoke enforceable arbitration agreements against it, its claims against Federal and Wal-Mart should proceed in litigation.  (ECF No. 18 at 11.) The Court has "the power inherent in every court to control the disposition of cases . . . with economy of time and effort" and judges have discretion to stay nonarbitrable claims when pending arbitration may moot those claims.  *See Hartford Fin. Sys., Inc. v. Fla. Software Servs., Inc.*, 550 F. Supp. 1079, 1085 (D.Me. 1982) (internal quotation marks and citation omitted). Moreover, a party that is not a signatory to the arbitration agreement may be "entitled to the benefit of the stay provisions of the FAA" if the claims against it arise out of the same operative facts and are "inherently inseparable" from the claims against a party who is bound by the arbitration agreement.  *Spencer Furniture, Inc. v. Media Arts Grp., Inc.*, 349 F. Supp. 2d 49, 53 (D. Mass. 2003).  Here, GEM's claims against Federal and Wal-Mart arise from the same operative facts as GEM's claims against CCI; consequently, judicial economy and efficiency are best served by staying GEM's claims against Federal and Wal-Mart pending the arbitration between GEM and CCI.

## III.   CONCLUSION

For the reasons stated above, this Court GRANTS Defendants' Motion to Compel Arbitration and Stay Proceedings.

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge
September 17, 2012